**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MAINE**

| | |
|---|---|
| THE UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>STATE OF MAINE; JANET MILLS, Governor of Maine, in her official capacity; AARON FREY, Attorney General of Maine, in his official capacity, SHENNA BELLOWS, Secretary of State of Maine, in her official capacity,<br><br>Defendants. | **COMPLAINT**<br><br>Case No.: |

Plaintiff, the United States of America, by and through its undersigned counsel, brings this civil action for declaratory and injunctive relief, and alleges as follows:

**INTRODUCTION**

1.    Federal law enforcement agencies operate throughout the United States enforcing federal law, including the immigration laws in Title 8. Their jobs are dangerous as they frequently investigate and apprehend violent criminals including cartel members, gang members, sex offenders, human traffickers, and other violent offenders. These brave agents, like their local counterparts, rely on various tools and techniques to stay safe while performing their official duties, including taking certain measures to keep their investigative activities and identities unknown to the general public and the criminals they investigate. One such tool is confidential license plates that cannot easily be tied back to their agencies through records requests or other means. The State of Maine has issued confidential license plates to law enforcement agencies for many years. Indeed, such plates are explicitly authorized under Maine law.

1

2.      Since President Donald J. Trump took office for the second time in January 2025, some states have tried to obstruct the Federal Government's immigration enforcement efforts, even though control over immigration and the nation's borders is an exclusive federal power. Maine is one of those states. In January 2026, apparently in response to a routine request for confidential license plates from Customs and Border Protection (CBP), Maine put its entire confidential plate program under review for federal agencies, but not state or local agencies.

3.      After that review, Maine's federal confidential plate program changed. Maine developed a new policy and began requiring federal agencies to attest on a newly-developed form as a condition of obtaining confidential plates. The form required the head of the agency to attest that Federal Government vehicles with Maine confidential plates would not be used for federal civil immigration enforcement. The form warned that a misrepresentation could result in criminal penalties.

4.      Though the Department of Homeland Security's (DHS) component agencies CBP and Immigration and Customs Enforcement (ICE) are primarily responsible for immigration enforcement, Department of Justice (DOJ) component agencies including the Federal Bureau of Investigation (FBI), the Drug Enforcement Administration (DEA), the Bureau of Alcohol Tobacco, Firearms, and Explosives (ATF) and the U.S. Marshal Service (USMS) also have Title 8 enforcement authority. Thus, Maine's new restrictions on vehicle usage under its confidential plate program essentially barred federal agencies in DHS and DOJ from obtaining confidential plates, while permitting state agencies to continue to receive them. Such discrimination is illegal.

5.      A few months later, Maine revised its restrictions for federal agencies seeking confidential plates. It agreed to allow confidential plates if the head of the agency would attest that the vehicles bearing the plates "will not be utilized for the purpose of federal civil immigration

enforcement, except where such use is incidental to or in support of the agency's authorized criminal investigation function." This requirement is still illegal. It discriminates against Federal immigration enforcement and Federal agencies that engage in it, both absolutely and as compared to state and local agencies, who, upon information and belief, have no similar attestation requirement.

6.       Maine's restrictions are also illegal because through those restrictions on Federal Government operations, Maine seeks to regulate the Federal Government's operations within the state by restricting which official duties an agent may execute and which federal laws the Federal Government may enforce. Under the Supremacy Clause, States do not have the power to dictate how the Federal Government executes its constitutional powers within their borders.

7.       The Maine policy cannot stand. It violates the Supremacy Clause by discriminating against and regulating the Federal Government. It must be declared unconstitutional and invalid, and it must be enjoined.

## JURISDICTION AND VENUE

8.       The Court has jurisdiction over this action under 28 U.S.C. §§ 1331 and 1345.

9.       Venue is proper under 28 U.S.C. § 1391(b)(1) because all defendants reside in this district.

10.       The Court has the authority to provide the relief requested under 28 U.S.C. §§ 1651, 2201, and 2202, and its inherent equitable powers.

## PARTIES

11.       Plaintiff, the United States of America, regulates immigration under its statutory and constitutional authorities. It is responsible for enforcing the federal immigration laws through its agencies, including the Departments of Justice, State, and Homeland Security (DHS), along

with DHS's component law enforcement agencies, including U.S. Immigration and Customs Enforcement (ICE) (which includes Homeland Security Investigations (HSI)) and U.S. Customs and Border Protection (CBP).

12.     Defendant Maine is a state of the United States.

13.     Defendant Janet Mills is the Governor of Maine and is being sued in her official capacity.

14.     Defendant Aaron Frey is the Attorney General of Maine and is being sued in his official capacity.

15.     Defendant Shenna Bellows is the Secretary of State of Maine and is being sued in her official capacity.

## LEGAL AND FACTUAL BACKGROUND

### THE SUPREMACY CLAUSE AND FEDERAL LAW ENFORCEMENT

16.     The Supremacy Clause of the United States Constitution mandates that "[t]his Constitution, and the Laws of the United States which shall be made in Pursuance thereof . . . shall be the supreme Law of the Land . . . any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const. art. VI, cl. 2. The Supremacy Clause incorporates principles of intergovernmental immunity, and thus, a state enactment is invalid if it "regulat[es] the United States directly or discriminat[es] against the Federal Government or those with whom it deals." *United States v. Washington*, 596 U.S. 832, 838 (2022) (citation omitted).

17.     The President has a constitutional duty to "take Care that the Laws be faithfully executed." U.S. Const. art. II § 3.

18.     Subordinate officers in various federal agencies assist the President in discharging that duty. *See Seila L. LLC v. Consumer Fin. Prot. Bureau*, 591 U.S. 197, 203–04 (2020); *see also*

*Tennessee v. Davis*, 100 U.S. 257, 263 (1879) (stating that the Federal Government "can act only through its officers and agents").

19. Because the authority to execute the laws "extend[s] over the whole territory of the Union, acting upon the States and upon the people of the States," federal officers and agents "must act within the States." *Davis*, 100 U.S. at 263. Accordingly, federal law enforcement officers carry out their duties within the several states, including Maine.

20. For example, DHS, through ICE and CBP, is principally responsible for enforcing our Nation's immigration laws, including the Immigration and Nationality Act (INA), and, pursuant to Congress's power to "establish a uniform Rule of Naturalization," U.S. Const. art. I § 8, cl. 4, make up the framework for the "governance of immigration and alien status," *see Arizona v. United States*, 567 U.S. 387, 395 (2012). In the wake of the terrorist attacks of September 11, 2001, the FBI was granted civil immigration authority in December 2002 by order of the Attorney General pursuant to 8 U.S.C. § 1103. In January 2025, DHS, also pursuant to 8 U.S.C. § 1103, gave that same authority to other DOJ components, including USMS, DEA, and ATF.

21. The INA confers upon the Executive Branch broad authority to inspect, investigate, arrest, detain, and remove aliens who are unlawfully present in the United States. *See, e.g.*, 8 U.S.C. §§ 1182, 1225–29a, 1231. As part of those enforcement efforts, DHS, through HSI, also investigates transnational crime and threats, including incidents of human smuggling and human trafficking. *See* 8 U.S.C. §§ 1324, 1232.

22. Federal law enforcement officers are responsible for investigating crime, executing and serving warrants, subpoenas, and summonses, making seizures of property and arrests, providing for the security of the federal courts, and ultimately safeguarding the security of the nation. *See, e.g.*, 18 U.S.C. § 3052 (Federal Bureau of Investigation); 21 U.S.C. § 878 (Drug

Enforcement Administration); 18 U.S.C. § 3051 (Bureau of Alcohol, Tobacco, Firearms, and Explosives); 28 U.S.C. § 566 (U.S. Marshals Service).

23.    Due to the nature of law enforcement operations, obtaining confidential registrations and license plates is critical to the success of those operations and to officer security. For example, sensitive law enforcement operations necessitating confidential license plates include the apprehension of fugitives, conducting surveillance and protective intelligence and protective operations, undercover operations, conducting drug investigations, fraud investigations, investigating missing persons and missing child cases, conducting abduction investigations involving dangerous actors, and safeguarding individuals under federal protection.

24.    Such operations require federal law enforcement officers to blend into the environment to avoid premature detection that could undermine the mission and place them at risk. If agents are forced to use a single traceable public plate, enforcement targets may be able to track and evade enforcement. The use of confidential registrations and license plates ensures that critical operations are not compromised before they begin.

25.    Federal law enforcement operations often involve the arrest of homicide suspects, sex offenders, drug traffickers, firearm offenders, and complex fraud actors. These missions depend on the agencies' ability to engage in undercover operations, conduct surveillance, approach targets safely, and execute arrests without prematurely alerting the targets. Confidentiality in these scenarios is essential to preventing violence, preserving evidence, and protecting the public.

### MAINE'S BUREAU OF MOTOR VEHICLES
### CONFIDENTIAL PLATE POLICY

26.    Maine's Bureau of Motor Vehicles ("BMV") is one of the bureaus within the Maine Department of State which is overseen by the Maine Secretary of State, Defendant Bellows.

27.     The Maine Revised Statutes address registrations for certain types of government vehicles. 29-A M.R.S.A. § 517. Most Maine government vehicles are required to have "distinctive plates." *Id.* at §517(2). Certain types of vehicles, however, can have confidential registrations and non-distinctive plates. *Id.* at § 517(4), (6), (8).

28.     29-A M.R.S.A. § 517(4) provides, **"Unmarked law enforcement vehicles.** An unmarked motor vehicle used primarily for law enforcement purposes, when authorized by the Secretary of State and upon approval from the appropriate requesting authority, is exempt from displaying a special registration plate. Records for all unmarked vehicle registrations are confidential."

29.     29-A M.R.S.A. § 517(6) provides, "**Federal government vehicles.** The Secretary of State may issue registration certificates and plates without fee to federal or other governmental agencies. Vehicles owned by the Federal Government used under lease to a Maine resident must be registered in this State."

30.     29-A M.R.S.A. § 517(8) provides, "Unmarked vehicles for child welfare purposes. Notwithstanding Title 5, section 7, an unmarked motor vehicle used regularly for work protecting the welfare of children under Title 22, chapter 1071, when authorized by the Secretary of State and upon approval from the appropriate requesting authority, is exempt from displaying a special registration plate."

31.     In January 2026, the Maine BMV announced a policy in which it paused the issuance of confidential license plates and registrations to federal law enforcement agencies while it reviewed its policies. Prior to that time, all federal law enforcement agencies, including the FBI, USMS, ATF, DEA, ICE, and CBP were able to obtain confidential plates and registrations for

their vehicles. According to news reports, the pause was prompted by a request from CBP for confidential license plates.[1]

32.     As of February 9, 2026, the Maine Secretary of State's Office sent a letter to federal agencies stating that the review of the policies was complete and as a result it would be using "a new application form for this special program that better clarifies the issuance of these plates to follow Maine law." The letter explained the new form requirements, including that it:

- o  "Includes statements that must be initialed to indicate the planned use for the plate and what agency/division will use it."

- o  "Requires the agency to maintain an alternate legal federal government registration."

- o  "Clarifies the application process must be completed annually."

33.     The February letter stated that any application "will be reviewed and considered in accordance with MRSA 29A section 517 (4)." The letter did not otherwise reference Maine law or indicate how the new application "better clarifies the issuance of these plates to follow Maine law."

34.     The February letter included a copy of the new application form.

35.     Not long after the BMV policy pausing confidential plates went into effect, multiple federal agencies sought to renew their current confidential license plates. The Maine BMV refused to issue confidential plates unless the agencies executed the new application form which required the heads of the agencies to attest to the following statements:

- The plate(s) will only be used on the specified **<u>unmarked</u>** motor vehicle used primarily for law enforcement purposes.

- The agency will maintain an alternate legal registration (federal, municipal, county, or

---

[1]News Center Maine Staff, "Maine pauses issuing undercover license plates following federal request" (Jan. 17, 2026), *available at* https://www.newscentermaine.com/article/news/local/maine-halts-new-license-plates-following-federal-request-for-undercover-plates/97-b7fe39a1-7427-440e-813b-dd218d8f7e01 (last visited May 27, 2026)

state)._

- The plate(s) will **NOT** be loaned to another law enforcement agency for their use.

- The plate(s) will **NOT** be utilized for federal civil immigration enforcement, including, but not limited to, Operation Catch of the Day.

- The plate(s) will only be attached to a vehicle owned or leased by the applicant agency.

- The plate(s) will not be attached to a rental vehicle._

- The plate(s) must be renewed annually by this same process.

36.    The new form differed in material respects from the prior form, which was a general request for confidential plates requiring little more than contact information, vehicle information, and a letter from the agency head.

37.    By contrast, the new form requires contact information, vehicle information, the initialing of multiple statements on how the vehicle will or will not be used within federal law enforcement operations, including that the vehicle will not be used for federal civil immigration enforcement, a certification by the chief law enforcement officer signing the form that the vehicle will only be used in accordance with the restrictions listed, and a perjury warning that states, "Under Title 17-A, Section 453, it is a Class D crime, punishable by up to a year in jail, and a $2000 fine, to make a written false statement, not believing it to be true, if done with the intent to deceive a law enforcement officer, or other public servant, in the performance of official duties."

38.    In May 2026, the Maine BMV again modified the form for the federal confidential plate program. Rather than stating that "The plate(s) will **NOT** be utilized for federal civil immigration enforcement, including, but not limited to, Operation Catch of the Day," the form was changed to say "The plate(s) will not be utilized for the purpose of federal civil immigration enforcement, except where such use is incidental to or in support of the agency's authorized criminal investigation function."

9

39.     Based upon Maine's February letter, which explained that Maine had paused the issuance of new confidential license plates to federal agencies while undertaking a review of its program and policies, it appears that the revised form pertains only to federal agencies seeking confidential plates in Maine and does not apply to state or local agencies. Thus, upon information and belief, a similar attestation regarding civil immigration enforcement is not required for state and local law enforcement vehicles seeking to obtain confidential plates.

40.     In any event, even if the attestation regarding civil immigration enforcement applied to state or local law enforcement agencies, it would not solve the discrimination problem because civil immigration enforcement is an exclusively federal function.

41.     The Maine BMV refuses to issue confidential plates to DHS components engaged in civil immigration enforcement including CBP and ICE unless they agree not to engage in such actions, which they cannot do. That is true even if the vehicles in question are also used by those agencies for criminal investigations. Maine will only issue them to other federal agencies with the required attestations regarding incidental civil immigration enforcement.

## MAINE'S BUREAU OF MOTOR VEHICLES' POLICY HARMS THE FEDERAL GOVERNMENT AND THE PUBLIC

42.     The United States has standing to bring this lawsuit where it "inten[ds] to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a [state] statute[,]" *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 159 (2014), and the Maine BMV's policy violates the Supremacy Clause and principles of intergovernmental immunity, and thus imposes a sovereign and irreparable injury on the United States, *cf. Arizona v. Yellen*, 34 F.4th 841, 851–53 (9th Cir. 2022); *Vt. Agency of Nat. Res. v. U.S. ex rel. Stevens*, 529 U.S. 765, 771 (2000). The United States has sovereign authority to manage federal law enforcement activities and, under the Supremacy Clause, need not cede that authority to Maine (or any state) by abiding

by its dangerous policy which jeopardizes federal law enforcement operations and the officers who carry them out. A favorable ruling would redress these harms.

43.     Even beyond the sovereign injury, which itself is sufficient for standing to seek an injunction, compliance with the BMV policy endangers officers and reduces operational effectiveness.

44.     Federal law enforcement agencies should not be subject to the challenged BMV policy, which is unconstitutional and recklessly disregards officer safety, public safety, and federal operational needs.

45.     The Maine BMV's policy poses detrimental impacts upon investigations and public safety by jeopardizing ongoing investigations that rely on discreet surveillance and inconspicuous movement.

46.     By refusing to issue confidential plates to DHS and component agencies unless they agree not to carry out their statutorily-mandated civil immigration functions, the Maine BMV's policy is a *de facto* ban on issuing such plates "until they satisfy a state officer." *Leslie Miller, Inc. v. Arkansas*, 352 U.S. 187, 190 (1956).

47.     When an unmarked vehicle can be traced to a federal agency, the negative consequences for federal law enforcement officers can be immediate. Federal officers rely on confidential plates to investigate, monitor, and apprehend targets. They help officers avoid confrontations and evasion by those targets or other members of the public. Taking away those plates requires officers to use traceable plates that may enable targets to identify, track, and evade law enforcement. Members of the public can also use this information to follow and impede law enforcement operations.

48.     In the event an investigative vehicle is identified because confidential plates were not issued, subjects may destroy evidence, evade apprehension, flee the jurisdiction, take countermeasures that endanger the public, or otherwise alter their behavior.

49.     Such risks stemming from the State's confidential plate policy are especially acute in drug trafficking, firearms trafficking, fraud, abduction, and missing child investigations. These sensitive investigations involve undercover meetings, controlled buys, and covert monitoring, where confidentiality is essential.

50.     The inability to obtain confidential registrations and license plates disrupts a multitude of mission sets that require operational anonymity, including fugitive investigations, sex offender investigations, firearms trafficking investigations, threat assessments, protective intelligence, surveillance operations, undercover operations, task force operations, missing person and missing child cases, abduction investigations, fraud investigations, narcotics trafficking investigations, counterterrorism operations, and state and local collaborative operations.

51.     Without confidential registrations and license plates, federal agencies may be forced to modify, delay, or forego operations, increasing risks to federal law enforcement officers and the communities they serve.

52.     The Maine BMV policy thus not only seeks to regulate how federal officers carry out their duties, but it does so to the detriment of the officers and the public.

53.     Federal law enforcement routinely transports government officials, federal judges, prisoners, and witnesses.

54.     If such vehicles can be identified as federal, hostile actors may track routes, anticipate movements, or attempt to interfere. This undermines layered security protocols and exposes protected individuals to unnecessary danger.

55.    Confidential registrations also ensure that the Maine BMV remains the custodian of sensitive ownership information, meaning only authorized individuals may access these records.

56.    Protecting the identities of federal officers is necessary in part due to the increasing threats of targeted harassment and retaliation against federal officers and agents for simply doing their jobs.[2] While such threats have always existed, they have increased exponentially, requiring new tactics to mitigate the harms to officer safety and operational effectiveness.

57.    Increasingly, members of the public photograph, film, and publish federal enforcement actions online and include the personal identities of federal officers for the sole purpose of intimidation and harassment. This content is directly used by members of organized crime and transnational criminal organizations in serious and potentially deadly ways.[3]

58.    For example, some individuals photograph officers' faces and run them through facial recognition applications that search social media and doxxing sites such as ICESpy.org, ICEList.is, and ICEList.info. Once a match is made, they often search for family members, including children, and disseminate this information online, allowing people to track, harass, and obstruct law enforcement.

59.    This opens officers up to harassment, tracking, and assaults in the performance of their duties in the field. These threats are coming from rioters, illegal aliens, as well as "highly sophisticated gangs like Tren de Aragua and MS-13, criminal rings, murderers, and rapists."[4] ICE officers have faced an 8,000% increase in death threats and more than a 1,000% increase in

---

[2] Press Release, DHS, 8000% Increase in Death Threats Against DHS, ICE Law Enforcement as They Risk Their Lives to Remove the Worst of the Worst (Oct. 30, 2025), https://perma.cc/VXK9-MSBQ

[3] *See, e.g.,* https://www.dhs.gov/news/2026/03/31/anti-ice-agitator-doxxes-ice-officer-north-carolina

[4] https://www.dhs.gov/news/2025/10/14/bounties-originating-mexico-offered-shoot-ice-and-cbp-officers-chicago.

assaults, harms that are exacerbated by doxxing websites that broadcast the identities and home addresses of officers and their families, encouraging retaliation against them.[5] Harassment and assault is not limited to immigration officers and agents; other federal agents including those from FBI, DEA, and ATF have been targeted for simply doing their jobs.

60.     Stripping federal agencies of the ability to remain confidential eliminates this safeguard and increases the risk that criminal actors or hostile organizations could obtain sensitive information.

61.     Moreover, it is in the public interest to enjoin the Maine BMV policy where state and local agencies routinely rely on federal partners for specialized resources, personnel, and operational support, especially during high-risk or large-scale incidents. For example, in the aftermath of the tragic October 2023 mass shooting in Lewiston, Maine, dozens of federal agents assisted state and local law enforcement with the ensuing manhunt and investigation. Compromising the anonymity of federal vehicles reduces the effectiveness of this support and limits the ability of federal agencies to respond quickly and safely when state and local partners request assistance.

62.     Confidential vehicle registrations are a critical component of safe, effective, and lawful federal law enforcement operations.

63.     Maine clearly understands that these plates can be crucial to law enforcement, which is why it offers them to state and local law enforcement and until recently provided them to federal agents as well. By boldly stripping this important tool away from only federal immigration officers, Maine has undermined those officers' ability to safely and effectively enforce the law.

---

[5] *See supra* note 2.

64.    The Maine BMV policy introduces substantial, unnecessary, and entirely preventable risks. It undermines federal security safeguards, conflicts with congressional intent regarding the enforcement of civil immigration laws, and weakens Maine's broader public safety posture.

65.    The United States is irreparably harmed by laws that violate the Supremacy Clause by regulating the United States, thus impinging on the ability of the United States to carry out its functions through its Executive agencies, particularly in the context of its sovereign functions, such as federal civil immigration enforcement.

66.    There is no other adequate remedy at law.

67.    The public interest favors maintaining our system of federalism and the constitutional lines drawn between federal and state power and enabling the Federal Government to carry out its functions as mandated by the Constitution and Congress.

68.    The public interest also favors allowing federal officers to safely and effectively enforce the laws of the United States.

<u>CLAIMS FOR RELIEF</u>

COUNT I

**VIOLATION OF THE SUPREMACY CLAUSE**
**(UNLAWFUL DISCRIMINATION AGAINST THE FEDERAL GOVERNMENT)**

69.    Plaintiff hereby incorporates paragraphs 1 through 68 of this Complaint as if fully stated herein.

70.    The Maine BMV's policy to refuse the issuance of confidential license plates to federal law enforcement agencies in Maine unless those agencies certify that the registered vehicle will not be used for civil immigration enforcement unless "such use is incidental to or in support of the agency's authorized criminal investigation function" discriminates against the Federal

15

Government because the Federal Government is primarily responsible for immigration enforcement.

71.     The Maine BMV's policy treats state and local law enforcement agencies better than their federal counterparts because state and local agencies can continue to receive confidential license plates without a similar certification requirement or restrictions.

72.     The Maine BMV's policy discriminates against the Federal Government by refusing to issue confidential license plates to Federal Agencies primarily responsible for the enforcement of federal civil immigration laws including CBP and ICE, while issuing confidential plates to state and local law enforcement engaged in criminal and civil enforcement.

73.     Accordingly, the Maine BMV's confidential plate policy unlawfully discriminates against the Federal Government in violation of the Supremacy Clause and should be declared unconstitutional and invalid.

**COUNT II**

**VIOLATION OF THE SUPREMACY CLAUSE**
**(UNLAWFUL REGULATION OF THE FEDERAL GOVERNMENT)**

74.     Plaintiff hereby incorporates paragraphs 1 through 68 of this Complaint as if fully stated herein.

75.     Maine's confidential plate policy constitutes an unlawful regulation of the Federal Government.

76.     Maine understands the benefits of confidential plates to law enforcement.

77.     Maine's confidential plate policy does not simply set a general condition to operate a vehicle in the state, instead it directly regulates a core government function by telling federal law enforcement that they cannot enforce certain laws if they want an otherwise available plate.

16

78.    To achieve that regulation, Maine demands that the head of the agency certify under Maine's perjury statute, that the vehicles will not be used for civil immigration enforcement, unless "incidental" to the agency's criminal authorities.

79.    By setting this condition, Maine seeks to regulate the Federal Government by dictating how the federal agents may do their jobs in Maine.

80.    Accordingly, the Maine BMV's confidential plate policy unlawfully regulates the Federal Government in violation of the Supremacy Clause and should be declared unconstitutional and invalid.

## PRAYER FOR RELIEF

WHEREFORE, the United States respectfully requests the following relief:

A.    That this Court enter a judgment declaring that Maine's Bureau of Motor Vehicles' confidential plate policy as applied to the Federal Government is unconstitutional and invalid because it regulates the Federal Government;

B.    That this Court enter a judgment declaring that Maine's Bureau of Motor Vehicles' confidential plate policy as applied to the Federal Government is unconstitutional and invalid because it discriminates against the Federal Government;

C.    That this Court permanently enjoin Defendants, as well as their successors, agents, servants, employees and attorneys, and all those working in concert with them, from enforcing the confidential plate policy against federal agencies and officers;

C.    That this Court award the United States its costs and fees in this action; and

D.    That this Court award any other relief it deems just and proper.

17

DATED: May 27, 2026

ANDREW B. BENSON
United States Attorney
District of Maine

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

YAAKOV M. ROTH
Principal Deputy Assistant Attorney General

SEAN SKEDZIELEWSKI
TIBERIUS DAVIS
Counsel to the Assistant Attorney General

ALESSANDRA FASO
Senior Litigation Counsel

/s/ Alexandra Schulte
ALEXANDRA MCTAGUE SCHULTE
Senior Litigation Counsel
U.S. Department of Justice, Civil Division
Enforcement & Affirmative Litigation Branch
P.O. Box 386
Washington, D.C. 20044-0386
(202) 718-0483
alexandra.schulte@usdoj.gov

*Attorneys for the United States of America*